IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| **CYNTHIA R. BROWN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | CV-10-BE-2771-J |
| ) | |
| **MICHAEL J. ASTRUE** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

On February 28, 2008, the claimant, Cynthia R. Brown, applied for a period of disability, disability insurance benefits, and supplemental security income under Title II and XVI of the Social Security Act. (R. 10, 88, 97). The claimant alleges disability commencing on September 15, 2007 because of disc bulges in the neck and back, degenerative disc disease, possible stroke, high blood pressure, and gallstones. (R. 55, 57, 133). The Commissioner denied the claims both initially and on reconsideration. (R. 55-59). The claimant filed a timely request for a hearing before an Administrative Law Judge, and the ALJ held a hearing on September 16, 2009. (R. 10, 27, 29, 66). In a decision dated October 21, 2009, the ALJ found that the claimant was not disabled as defined by the Social Security Act and, thus, was ineligible for disability insurance benefits and supplemental security income. (R. 7, 21-22). On August 10, 2010, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision

became the final decision of the Commissioner of the Social Security Administration. (R. 1). The claimant has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

## II.  ISSUES PRESENTED

In this appeal, the claimant argues that the Commissioner erred by (1) failing to properly consider the claimant's obesity and its exacerbating effects while determining her residual functional capacity; (2) failing to fully and fairly develop the record; and (3) improperly discounting a treating physician's opinion.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir.1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No...presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

### IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app.1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

The ALJ must give the testimony of a treating physician substantial or considerable weight unless the ALJ finds "good cause" to the contrary. *See Lewis v. Callahan*, 125 F.3d 1436,

1440 (11th Cir. 1997). The ALJ may discount a treating physician's report when it is not accompanied by objective medical evidence or is wholly conclusory. *See Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and failure to do so is reversible error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

## V. FACTS

The claimant was thirty-seven years old at the time of the ALJ hearing and reports a tenth grade education. (R. 17, 31, 106). Her past work experience includes employment as a trim saw operator, dishwasher, cook, escort vehicle driver, furniture builder, waitress, cashier, cabinet assembler, and telemarketer. (R. 20, 123). The claimant alleged disability beginning on September 15, 2007 because of disc bulges in the neck and back, degenerative disc disease, possible stroke, high blood pressure, and gallstones. (R. 55, 57, 133). She has not worked since September 15, 2007 and is currently insured for disability insurance benefits through December 31, 2011. (R. 12, 32, 133, 167).

*Physical and Mental Limitations*

On May 1, 2007, Dr. Michelle Turnley, certified for physical medicine and rehabilitation, diagnosed the claimant as having mild cervical and lumbar degenerative disease in her neck and back. (R. 212). MRIs and x-rays showed disc space narrowing and a mild bulge in the lumbar spine and mild spondylosis in the cervical spine. (R. 212, 214). The claimant rated her pain as 6 on a scale of 0-10 on July 6, 2007. (R. 220). Family practitioner, Dr. Gillis, on April 16, 2008, noted a decreased range of motion with the claimant's neck and back. (R. 287). Epidural injections did not improve the claimant's condition, though physical therapy twice a

week provided some improvement. (R. 286). She had normal ambulatory gait but required assistance to rise after squatting. (R. 287). In Dr. Gillis's opinion, the claimant had moderate functional limitations. (R. 288).

Medical consultant, Dr. G. Smith, provided a residual functional capacity evaluation on May 6, 2008. (R. 302-7). Dr. Smith found the following maximum exertional limitations: occasionally lifting and/or carrying 50 pounds, frequently lifting and/or carrying 25 pounds, standing and/or walking 6 hours in an 8-hour workday, and sitting for a total of 6 hours in an 8-hour workday. (R. 303).

In his functional assessment of claimant dated September 16, 2009, treating physician Dr. Jeffrey Long filled out a form by checking blocks.  That assessment provided the opinion that the claimant could stand or walk only 1-2 hours a day for either activity and sit for 6 hours total in an 8-hour day. (R. 500). The claimant could lift or carry 2-4 pounds frequently and 4-6 pounds occasionally. The form did not request that the assessor provide the basis for his opinion on these matters, and Dr. Long did not offer any basis for his opinion. (R. 500). In a second assessment of claimant dated September 16, 2009, entitled "Clinical Assessment of Fatigue/Weakness," Dr. Long filled out a multiple choice form and circled the choice that "Fatigue/weakness is present to such an extent as to negatively affect adequate performance of daily activities and work." (R. 502). The form did not request that the person filling out the form state the basis for the opinion, and Dr. Long did not offer any basis for his opinion.  In another multiple choice assessment form of the same date, entitled "Clinical Assessment of Pain," Dr. Long selected statements indicating the claimant's pain negatively impacts adequate work performance and that her condition would cause 4 or more absences (on average) each month

from work. (R. 503). The form provided a place for comments, but Dr. Long did not provide any comments to support his answers.

Throughout the record, clinical assessments note the claimant's obesity. (R. 214, 231, 264, 286, 408, 435, 480). At the time of the ALJ hearing, the claimant was 5' 5" and weighed 253 pounds, the weight at which Dr. Gillis found the claimant obese. (R. 42, 286). Treatment notes showed the claimant consistently weighed over 250 pounds during the time encompassed by the record. (R. 123, 189-98, 203-4, 239-43). Her obesity complicated a hernia operation on June 6, 2009. (R. 435). Also, a psychiatric evaluation in September 1, 2009 described the claimant's appearance as obese.

The claimant received psychiatric evaluation and therapy from June 14, 2009 to September 1, 2009. (R. 476-96). Identified problems included depressed mood, social isolation, and poor coping skills (R. 491-92). For current stressors or events exacerbating the problems, the therapy notes list problems in a long-term relationship, family, worry over health issues, and a death. The claimant also reported recent methamphetamine use and history of strokes, hernia, and hysterectomy. (R. 477). The therapist gave the claimant a score of 41 for Global Assessment of Functioning (GAF). (R. 477). This score indicates serious functional impairment in social, occupational, or school settings.

On April 28, 2008, the claimant underwent a laparoscopic cholecystectomy procedure for acute cholecystitis, usually caused by gallstones that thicken and inflame the gallbladder wall. After the procedure, the claimant was sent "to the recovery room in excellent condition." (R. 290-91, 298).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for disability insurance benefits and supplemental security income, the claimant requested and received a hearing before an ALJ. (R. 10, 66, 27, 29). At the hearing, the claimant testified that she is unable to work primarily because the arthritis and bulging discs in her back keep her from sitting or standing for long periods of time. (R. 35). She reported that on an average day she has a pain-level of eight out of ten, with ten requiring a visit to the emergency room. (R. 36). The reported pain in her neck radiates from her shoulders to her hands, affecting her ability to lift or hold things, and the pain in her back radiates to her legs, affecting her ability to walk. (R. 40-41).

According to her testimony, the claimant is unable to function or get out of bed about five days a week. (R. 38). She has trouble sleeping at night because of sleep apnea, and she cannot afford a C-Pap device. (R. 38-39). Because of the pain, she reported that she can sit only for a total of 15-20 minutes at a time and can stand only for the same amount of time. She also stated that she does not usually walk far, usually only to the car and back to the house. (R. 33-34).

When asked whether she could work at a job that allowed her to sit or stand whenever she wanted, the claimant responded she could not because of the frustration and that she cries a lot. (R. 36). She stated that she is constantly fidgety when sitting, and she would not be able to keep her attention focused, for example, on a video screen looking for shoplifters. (R. 36).

A vocational expert, Patsy Bramlett, testified concerning the type and availability of jobs the claimant was able to perform. (R. 44-49, 52-53). She categorized the claimant's work history according to the Dictionary of Occupational Titles. (R. 44). The jobs included saw operator,

escort vehicle driver, server, cabinet assembler, restaurant kitchen worker, dish washer, and telemarketer. (R. 44-46). The exertional and skill levels of these positions ranged from sedentary and unskilled to medium to lower semi-skilled. (R. 44-46). The ALJ then asked the vocational expert several hypothetical questions about the claimant's ability to return to work at her previous positions. (R. 46-50).

For the first question, the vocational expert assumed a hypothetical person with the claimant's age, education, prior work history, and training. (R. 46). This individual could occasionally lift 50 pounds, frequently lift or carry 25 pounds, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (R. 46). However, the individual could not work on hazardous machinery or at unprotected heights. (R. 46). The vocational expert stated that with these attributes an individual could return to work in all of the claimant's past positions except for saw operator and cabinet assembler because of the hazardous work limitation. (R. 47).

The second hypothetical reduced the exertional limitation to light work consisting of occasionally lifting 20 pounds and frequently lifting or carrying 10 pounds. (R. 47). According to the vocational expert, this hypothetical eliminated a return to jobs requiring at least medium-level exertion such as dishwasher and kitchen worker as well as cabinet assembler and saw operator. (R. 47). The third hypothetical involved the same limitations for an individual but with the added requirement of a low stress job (defined as SVP 2 or less). (R. 47-48). The vocational expert stated that this additional requirement eliminated a return to any of the claimant's previous jobs except for escort vehicle driver. (R. 48). When asked whether this hypothetical person could perform other jobs, the vocational expert suggested the jobs of inspector,

assembler, and sorter each with 500 - 800 positions in the state and 30,000 or more in the nation. (R. 48). These jobs are also consistent with an additional hypothetical limitation of work activity to sitting or standing only. (R. 49).

      The claimant's attorney asked the vocational expert about her assessments in light of Dr. Long's functional capacity evaluations. (R. 52-53). In the evaluation, Dr. Long stated the claimant required 3-4 breaks during normal work hours where she would have to lie down and the claimant would require at least four absences a month on average. (R. 52). The vocational expert answered that these requirements eliminated a return to all types of jobs. (R. 52). The vocational expert also stated that a pain-level of eight out of ten and the inability to get out of bed five days a week precluded a return to any type of job. (R. 53).

*The ALJ's Decision*

      On October 21, 2009, the ALJ issued a decision finding the claimant was not disabled under the Social Security Act. (R. 7, 21-22). The ALJ did find the claimant met the insured status requirements of the Social Security Act through December 31, 2011, and the claimant had not engaged in substantial gainful activity since the alleged onset of her disability on September 15, 2007. (R. 12). The ALJ also found the claimant had the following severe impairments: cervical spondylosis, degenerative disc disease, and a cervical disc bulge. (R. 12). Although the ALJ's section heading for step 2 of the disability determination did not specifically list obesity as a severe impairment (Finding number 3), the ALJ did expressly describe this condition as a severe impairment in the text for that section. (R. 12, 15). The ALJ considered all of the impairments in concluding that the "claimant does not have an impairment or combination of

impairments" that manifest the specific signs and diagnostic findings required by the Listing of Impairments. (R. 16).

The ALJ next considered the claimant's subjective allegations of pain and other symptoms. He determined that she had "the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c)." (R. 17). The ALJ found that the impairments "could reasonably be expected to cause the alleged symptoms," but the claimant's assertions of her symptoms were not credible regarding their "intensity, persistence and limiting effects" beyond the ALJ's assessment of her residual functional capacity. (R. 17).

The ALJ supported his assessment by referencing the evaluations of Dr. Turnley and Dr. Gillis. (R. 18). Dr. Turnley did not find the claimant in acute distress in May 2007. (R. 18). An MRI showed a mild cervical disc bulge and mild degenerative disc disease. (R. 18). In April 2008, Dr. Gillis's consultative examination showed no deformities, tenderness, or spasms of the back. (R. 18). The claimant had normal ambulatory gait, though she required assistance to rise after squatting. (R. 18).

Given the results of these examinations, the ALJ found the claimant's allegations of pain lacked credibility. (R. 18). The medical evidence did not support the alleged degree of limitations. (R. 18). The ALJ assigned little weight to the evaluation forms from Dr. Long. (R. 19). These forms indicated more severe limitations for activities such as sitting, walking, standing, and lifting objects. (R. 19). According to the ALJ, this opinion conflicted with Dr. Long's treatment notes that stated the claimant's gait and station, muscle strength/tone, palpation for tenderness or deformity, range of motion/stability were all normal. (R. 19). The opinion also conflicted with other medical evidence such as the MRI and x-ray tests showing

only a mild cervical bulge and mild degenerative disc disease. (R. 19). The ALJ found the opinion expressed in the forms unsubstantiated by the doctor's clinical findings and, thus, conclusory.

The ALJ also discounted the GAF score of 41 from a non-medical source during the claimant's mental health treatments. (R. 18). He found that though this score is severe, the claimant's diagnosis of depression was mild and the claimant was discharged. (R. 18). The ALJ considered the GAF score as unsupported by the diagnosis or by any tests in the record. (R. 18). The ALJ further found that the claimant's "medical impairments of depression and anxiety, considered singly and in combination," would cause only minimal limitations with mental work activities. (R. 15). Accordingly, the ALJ determined that the mental impairments were not severe. (R. 15, 18).

Based on the evidence, the ALJ found the claimant's impairments limited her work ability to performing at a medium exertional level or lower. (R. 20). This residual functional capacity includes the claimant's past work as an escort vehicle driver, waitress, kitchen worker, dish washer, and telemarketer. (R. 20). Also, with the claimant's limitations, the ALJ found she could work as an inspector and assembler, both of which exist in significant numbers in the national and state economies. (R. 21). Because the claimant retains the capacity to work, the ALJ concluded the claimant is not disabled. (R. 21).

## VI. DISCUSSION

**A.     The Consideration of Obesity in Determining Residual Functional Capacity**

The claimant argues that the Commissioner failed to properly consider the claimant's

obesity and its exacerbating effects in determining her ability to work. The ALJ must consider the cumulative effects of obesity on her ability to perform work-related tasks. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00Q. Obesity is a severe impairment if it, alone or in combination with other impairments, "significantly limits an individual's physical or mental ability to do basic work activities." SSR 02-01p.

In the instant case, the ALJ's opinion did not include obesity in the heading listing step 2 severe impairments. However, that omission does not mean that the ALJ overlooked her obesity or failed to follow the ruling governing its treatment. To the contrary: the ALJ clearly addressed her obesity and its effect in the *text* of his opinion, and referred to the appropriate ruling governing obesity. In the discussion of the claimaint's residual functional capacity in the instant case, the ALJ specifically noted the claimant's physical dimensions of 5'5" in height and 255 pounds in weight and characterized her as morbidly obese. The ALJ also stated that the medical evidence does not consistently show the impact of the claimant's obesity on her "musculoskeletal system or general health," and that her treating physician did not "diagnose her with impairments secondary to or in combination with obesity." (R. 15). Indeed, Dr. Long's treatment notes did not discuss claimant's obesity and did not state that she had functional limitations as a result of her weight. (R. 448-57). In short, the ALJ did consider her obesity, but he did not find that claimant had proven that it was a severe impairment within the guidance of SSR 02-01p nor did he find that she had proven it significantly affected her residual functional capacity.

In addition, the ALJ referenced Dr. Gillis's disability examination that lists obesity under the results of the detailed physical examination. (R. 286). With knowledge of this condition, the

medical consultant determined the claimant had only moderate functional limitations.(R. 288). The ALJ properly relied upon this finding, as well as the other corroborating medical evidence, in determining that the plaintiff would not be barred from performing medium-level work. *See Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005) (concluding that the ALJ's reliance on the opinion of physician who was aware of claimant's obesity constituted a satisfactory consideration of that condition).

The claimant contends that the ALJ should have considered the claimant's obesity in conjunction with the GAF score of 41 given by the Northwest Mental Health Center on June 18, 2009. (R. 477). The claimant argues that obesity "was likely a dominant factor" in the assessment. (Plaintiff's Brief 12). Yet, the claimant has the burden of proving she has a severe impairment or combination of impairments. *Jones v. Apfel*, 190 F.3d 1124, 1228. None of the mental health center's evaluation forms or therapy notes lists obesity as a stressor exacerbating the claimant's mental health problems. (R. 476-95). A psychiatric evaluation performed on September 1, 2009 does circle "obesity" for the claimant's appearance, but the five-page assessment does not describe obesity as a pertinent psychological factor. (R. 480, 482-86). The evidence in the record does not support an additional impact with the claimant's obesity on the ALJ's consideration of the GAF score and mental health issues.

The claimant also contends that the ALJ failed to properly pose hypothetical questions to the Vocational Expert at the ALJ hearing, because he did not reference the claimant's obesity impairment. The ALJ's hypothetical questions must comprise all of a claimant's functional impairments that the record supports for the Vocational Expert's testimony to constitute substantial evidence. *Jones v. Apfel*, 190 F.3d 1224, 1228-9 (11th Cir. 1999). The ALJ – not the

Vocational Expert – has the duty to review the medical evidence and set forth the claimant's credible limitations that are supported by the record.

In the instant case, as discussed above, the ALJ found that claimant's obesity was not a severe impairment and did not cause any additional functional limitations. The court finds that substantial evidence in the record supports the ALJ's finding. Therefore, the court finds that the ALJ was not required to include in the hypothetical questions obesity or obesity related limitations that were not supported by substantial evidence in this case. Thus, substantial evidence supports the ALJ's finding based on the Vocational Expert's testimony and the hypothetical questions posed.

In sum, after careful consideration of this and other evidence, the court finds that the ALJ properly determined the claimant's residual functional capacity.

**B.     The ALJ's Development of the Record**

The claimant argues that because the ALJ did not obtain additional medical evidence regarding the claimant's obesity and its effect on other health conditions, the ALJ failed to properly develop the record. The ALJ does have "a basic obligation to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Graham*, 129 F.3d at 1422. Nevertheless, the claimant bears the burden of proving she has a severe impairment or combination of impairments. *Jones*, 190 F.3d at 1228. Consequently, the claimant has the responsibility for producing evidence in support of her claim. *Ellison*, 355 F.3d at 1276. To remand a case for further development of the record, a court must find a showing of clear prejudice that violates the claimant's right to due process. *Graham*, 129 F.3d at 1423.

The claimant does not argue for the existence of prejudice with the development of the

record nor does she argue how additional evidence was necessary for the ALJ's decision. The claimant infers that her obesity calls into question her ability to perform her former occupations as a trim saw operator and cabinet assembler and demanded additional medical evidence. (Plaintiff's Brief 14). At the time of the ALJ hearing, the claimant was 5' 5" and weighed 253 pounds, the weight at which Dr. Gillis found the claimant obese. (R. 42, 286).[1] Yet, treatment notes showed the claimant consistently weighed over 250 pounds during the time that the claimant worked as a trim saw operator. (R. 123, 189-98, 203-4, 239-43). The claimant's argument does not indicate a need for additional evidence. Without a showing of prejudice, this court finds no reason to remand the case to the Commissioner.

C.      The ALJ's Discounting of a Physician's Opinion

The claimant argues that the ALJ improperly discounted Dr. Long's opinion reflected in the three assessment forms dated September 16, 2009, provided by the claimant's attorney. The ALJ must give the opinion of a treating physician substantial or considerable weight unless the ALJ finds "good cause" to the contrary. *See Lewis*, 125 F.3d at 1440. The ALJ may discount a treating physician's opinion when it is not accompanied by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d at 583.

The ALJ in this case found the statements expressed in the forms to be wholly conclusory, unsupported by any clinical diagnosis, and inconsistent with other medical evidence. The ALJ notes the absence of clinical findings in the forms. Despite the severity of

---

[1] The Body Mass Index (BMI) is 42.1 for a person 5' 5" in height and 253 pounds in weight. This BMI classifies an individual as extremely obese according to the *Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults* from the National Institutes of Health (NIH). *See* SSR 02-1p.

impairments expressed in the forms, the ALJ recounted inconsistencies with this opinion and the doctor's treatment notes that stated the claimant's gait and station, muscle strength/tone, palpation for tenderness or deformity, range of motion/stability were all normal. The ALJ found that other medical evidence, as well as the claimant's own statements, conflicts with the opinion expressed in the forms. The ALJ did not find records to support this opinion. The court finds that the lack of supporting evidence and the conclusory nature of the statements substantiate the ALJ's decision to discount Dr. Long's opinion expressed in the forms and provide good cause for rejecting it.

The claimant specifically contends the ALJ should have sent the claimant back to Dr. Long for a reevaluation if the ALJ thought the forms were incomplete. However, the ALJ has the obligation to seek additional evidence *only* if the evidence in the record was insufficient to support a decision. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). To the ALJ, the incompleteness of the opinion sections indicated the lack of substantiating clinical findings and not that the doctor had an insufficient opportunity to complete the forms. As discussed above, this reason was only one of several the ALJ provided for discounting the opinion expressed. The record contained enough evidence for the ALJ to decided upon the opinion expressed in the forms and to decide on the claimant's disability. The ALJ did not have an obligation to send the forms back to Dr. Long for a reevaluation. *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 273-75 (6th Cir. 2010) (holding ALJ was not required to recontact physician before discounting her opinion because of the lack of corroborating objective medical evidence).

## VII. CONCLUSION

For the reasons as stated, this court concludes that substantial evidence supports the

decision of the Commissioner. Therefore, the Commissioner's decision is AFFIRMED. The court will enter a separate order to that effect simultaneously.

DONE and ORDERED this 7th day of September, 2011.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE